UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO MADRID,

    Plaintiff,                                       No. 17-11266

v.                                                District Judge Avern Cohn
                                                   Magistrate Judge R. Steven Whalen

GLENN KING, ET AL.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

On April 21, 2017, Plaintiff Mario Madrid ("Plaintiff"), formerly a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a civil complaint through counsel under 42 U.S.C. § 1983, alleging violations of his First and Eighth Amendment rights by MDOC employees Glenn King, Mark Holey, and Cindy Olmstead.[1] Currently before the Court is Defendants Cindy Olmstead's and Mark Holey's July 17, 2017 Motion to Dismiss [Docket #7] which has been referred for Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the following:

    That the motion be GRANTED as to the Eighth Amendment Claims against Defendants Olmstead and Holey;

---

[1] While Cindy Olmstead is referred to as "Omstead" in the Complaint, her responsive pleading lists her name as Olmstead.

> GRANTED as to the First Amendment retaliation claims against Defendant Holey;
>
> DENIED as to the First Amendment retaliation claims against Defendant Olmstead; and
>
> DENIED as to Defendant Olmstead's motion for qualified immunity.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff, represented by counsel, makes the following allegations:

During his incarceration at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan, Plaintiff was employed by the Michigan Braille Transcribing Fund ("MBTF") as a Braillist certified by the Library of Congress in Literary and Nemeth transcription.[2] *Complaint,* ¶ 1-2., *Docket #1,* Pg ID 1. At the time of the September, 2014 events in question, Defendant Cindy Olmstead ("Olmstead") was the Director of MBTF and Defendant Mark Holey ("Holey") was Olmstead's assistant. *Id.* at ¶ 3. Defendant Glenn King ("King"), an MDOC Corrections Officer, "worked within the confines of MBTF for security purposes." *Id.* MBTF paid MDOC for security services. *Id.*

Plaintiff alleges that King sexually harassed prisoner employees within the MBTF by placing pornographic materials of male genitalia on their work stations and person. *Id.* at 4. King would also recount "hand masturbating his dog" to MBTF employees. *Id.* On September 11, 2014, King began sexually harassing Plaintiff by placing pornographic

---

[2]Plaintiff states that the MBTF "trains and employs JCF inmates in transcribing reading materials for the blind." *Complaint* at ¶ 2.

material on his person and workstation. *Id.* at ¶ 5. When Plaintiff objected to King's actions, King made verbal threats to Plaintiff which included doing "what he wants to with Plaintiff" and having Plaintiff transferred. *Id.* In response, Plaintiff "immediately logged verbal complaints" with Olmstead "about the sexual harassment and retaliatory threats." *Id.* at ¶ 6. Plaintiff also made verbal complaints to Holey. *Id.* The next day, King contacted "another MDOC employee" and asked to have Plaintiff moved to a different unit because "'he was too big for his britches.'" *Id.* at ¶ 7. Plaintiff was moved to the "F Unit" which was commonly referred to as "'Cadys Doll House'" where many transgender prisoners were housed. *Id.* He was placed in a cell with a schizophrenic cell mate. *Id.* On September 14, 2014, Plaintiff filed a formal complaint against King, alleging "sexual harassment, retaliation, and unjustified move." *Id.* at ¶¶ 8-9. The following day, Plaintiff was moved back to his original room in Unit E. *Id.* at ¶ 9.

On September 19, 2014, King issued Plaintiff a misconduct ticket for being "Out of Place" which Plaintiff describes as "a backdoor means of using prison rules as a form of punishment and retaliation related to [Plaintiff's] work." *Id.* at ¶ 10. On September 30, 2014, Plaintiff was found guilty of the misconduct and given three days of loss of privileges. *Id.* at ¶ 11. However, upon rehearing, Plaintiff was found not guilty. *Id.* Plaintiff lodged verbal and written complaints with "various MDOC staff" asking to have King's work computer seized and searched for pornography in the hope that King's "campaign of harassment and retaliation would stop." *Id.* at ¶ 12.

On October, 9, 2014, King's computer was searched for evidence of pornography and other "misconduct." *Id.* at ¶ 13. The very next day, Olmstead lifted Plaintiff's "hold" which had previously been put in place to keep him from being transferred. *Id.* at ¶ 14. As a result, Plaintiff was transferred to another facility which resulted in the loss of his well-paying job as a Braillist. *Id.* Plaintiff alleges that Olmstead "implicitly authorized[,] approved[,] and knowingly allowed the adverse action of terminating [Plaintiff's] employment" despite that he had been employed with the MBTF for more than eight years. *Id.* Plaintiff filed complaints regarding his transfer, but was told that the transfer had been approved by the warden "until the investigation can be completed." *Id.* at ¶ 15. As a result of the retaliatory transfer, Plaintiff lost "highly lucrative wages while incarcerated" and "a highly desirable career as a Braillist upon his release" from prison. *Id.* at ¶ 16.

On April 15, 2015, Plaintiff was informed that an investigation found "sufficient evidence" to support the allegations against King and as a result, King was terminated from MDOC employment. *Id.* at ¶ 17. However, following arbitration, King was reinstated by the MDOC and then boasted that Plaintiff was the "only one not present, and not working here now." *Id.* at ¶ 18.

Plaintiff alleges that his complaints against King "resulted in cruel and unusual conditions of confinement" and that the "adverse actions" taken against him in response to his complaints against King would "deter persons of ordinary firmness from continuing the protected conduct." *Id.* at ¶ 19. He alleges that Olmstead and Holey failed to investigate the

-4-

complaints or take "meaningful corrective action." *Id.* at ¶¶ 20-22. He alleges that Olmstead "turned a blind eye for years to numerous sexual violations within MBTF." *Id.* at ¶ 22.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419(6 th Cir.2001).

In assessing the sufficiency of a complaint, the court must first determine whether it contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678 (*citing Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief. *Iqbal,* at 678–679.

## III. ANALYSIS

In support of the motion to dismiss, Defendants Olmstead and Holey argue first that Plaintiff's Eighth Amendment claims should be dismissed for multiple reasons. *Defendants' Brief,* 4-13, *Docket #7,* Pg ID 32. They argue that although MBTF contracts with MDOC*,* Defendants are not "state actors" and thus not subject to claims under § 1983. *Id.* at 5-8. Alternatively, they argue that even if they are found to be state actors, they are entitled to

qualified immunity. *Id.* at 8-10. They also contend that Plaintiff's allegations of sexual harassment do not rise to the level of an Eighth Amendment violation. *Id.* at 10-13.

In a separate argument, Defendants contend that the loss of Plaintiff's job as a Braillist does not allege a property or liberty interest required for a constitutional claim. *Id.* at 13-15. Finally, Defendants argue to the extent that Plaintiff "seemingly includes[s]" a claim for "compensation for lost wages," he cannot show that he is an employee of MBTF. *Id.* at 15-18.

The Court will take Defendants' arguments out of order. Defendants' argument that Plaintiff, formerly a prisoner worker at MBTF, is not entitled to the statutory protections of a non-prisoner "employee" of MBTF appears to be based on an erroneous interpretation of the civil rights Complaint. Plaintiff's reference to himself as an "employee" appears to be synonymous with "prison worker." However, Defendants are correct that Plaintiff is not an "employee" of MBTF as the term is used in a non-prison context. *See Sims v. Parke Davis, & Co.,* 334 F. Supp 774, 777 (E.D. Mich. 1971).

Next, because Plaintiff has not alleged a physical injury by either of these Defendants, the Eighth Amendment claims are dismissible on their merits. Plaintiff's allegation that Olmstead and Holey failed to investigate King's behavior does not state a claim of constitutional magnitude. In regard to these claims, the Court need not determine whether Defendants were state actors or whether they are entitled to qualified immunity.

Defendants' argument that the loss of a prison job and unwanted transfer, standing

alone, do not support a constitutional/due process claim is essentially correct, but inapplicable given that Plaintiff actually alleges that these "adverse actions" were taken in retaliation for his complaints about King. The claim, then is a First Amendment retaliation claim, not a due process claim.  In regard to the retaliation claims, the Court will consider first whether Defendants are "state actors" and then, whether Plaintiff has stated a claim of retaliation.[3]

### A. The Eighth Amendment Claims Against Present Defendants

Plaintiff's failure to allege a physical injury by either Olmstead or Holey defeats the Eighth Amendment claims against these Defendants. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)(*citing* 42 U.S.C. § 1997e(e)("'No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). Because the Complaint does not allege physical harm by present Defendants, the Eighth

---

[3] Defendants are correct that Plaintiff's claim fails to the extent that the Complaint can be construed to claim a "property interest" in his job as a Braillist or the right not to be transferred.  However, Defendants' motion to dismiss does not address Plaintiff's claim that he was transferred and lost his job in retaliation for his complaints about King or even contain the word "retaliation." Defendants first acknowledge the retaliation claims and argue for their dismissal in their reply brief. *See Reply, Docket #15* at 1-3, Pg ID 231.  *Thebert v. Potestivo & Associates, P.C.*, 2017 WL 3581322, at *6 (E.D.Mich. August 18, 2017)(Micheson, J.)(*citing Benton v. Laborers' Joint Training Fund*, 121 F.Supp.3d 41, 51–52 (D.D.C. 2015)) ("'it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief'").  Nonetheless, the Court will discuss whether Plaintiff has stated a claim of First Amendment retaliation.

Amendment claims against them should be dismissed.[4]

Further, Plaintiff's allegation that Olmstead and Holey failed to investigate King's behavior does not state a claim of constitutional magnitude. "A claimed constitutional violation must be based upon active unconstitutional behavior." *Thomas v. Caruso*, 2008 WL 4738439, at *2 (W.D.Mich. October 24, 2008)(*citing Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.2002)). "The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Notably, while Plaintiff alleges that he lost his job and was transferred in retaliation for reporting the alleged misconduct and that King continued to make threats against him, he does not claim that after reporting the September 11, 2014 sexual harassment to Olmstead and Holey that he experienced further sexual harassment by King or any other individual. Because Plaintiff has not plead that either Olmstead or Holey violated his Eighth Amendment rights, I recommend that these

---

[4] At present, the Court need not determine whether Plaintiff's allegations that Defendant King (not a party to this motion) placed pornographic materials "on his person" states a claim of contact-based sexual harassment. *Complaint* at ¶ 6. "Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain." *Hailey v. Washington et al.*, 2018 WL 341655, at *6 (W.D.Mich. January 9, 2018)(collecting cases). Plaintiff's response to the present motion does not elaborate on his original allegation that King placed pornographic materials "on his person."

claims against present Defendants be denied.[5]

### B. Whether Defendants Olmstead and Holey are State Actors

The Supreme Court has set forth a two-part test for "determining whether the actions of a private party causing the deprivation of a federal right are attributable to the state." *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir.1992)(*citing Lugar v. Edmondson Oil Co., Inc.*,

---

[5]

In response to the present motion, Plaintiff alleges for the first time that between the time he made his complaints against King on September 11, 2014 and the transfer the following month, he experienced hypertension, vomiting, sleep deprivation, stress and headaches as a result of King's actions. *Response, Plaintiff's Exhibit 3, ¶ 9.* The Court will construe Plaintiff's new allegations as a motion to amend the Complaint under Fed R. Civ. P. *See JAT, Inc. v. National City Bank of Midwest*, 460 F.Supp.2d 812, 818 (E.D.Mich. 2006)(Edmunds, J.)("Where Plaintiffs are not attempting to plead new causes of action against Defendants, but are merely providing additional support to their initial pleading, this Court is inclined to allow an implicit motion to amend at this stage").

However, Plaintiff's newfound allegations of physical injury do not change the finding that he has not stated Eighth Amendment violations by either Omstead or Holey. As such, the Court declines at present to determine whether Plaintiff's allegations of vomiting, headaches, and hypertension over the course of one month allege more than *de minimis* physical injury. *See Dyer v. Hardwick*, 2011 WL 4036681, at *8 (E.D.Mich. August 1, 2011)(*Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998))("claims for monetary relief are dismissed in their entirety when the Plaintiff cannot plead or prove" non-*de minimis* physical injury). *See Dorch v. Munoz*, 2011 WL 1987621, at *3 (W.D.Mich. May 20, 2011)("hives outbreak" *de minimis* physical injury); *Id.* (*citing Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. June 25, 2002))("two small bruises and minor cuts were *de minimis* injury); *Benson v. Carlton*, 2000 WL 1175609, at *1 (6th Cir. Aug.9, 2000)("'whirling sensation'" in head was *de minimis* injury)). *See also Gavin v. Abood*, 2009 WL 3199057, at *24 (E.D.Mich. September 30, 2009)(Hood, J.)(*citing Robinson v. Corrections Corp. of America*, 14 Fed.Appx. 382, 383 (6th Cir. 2001))(itching, "panic attacks and crying spells" *de minimis*); *Reeves v. Jensen*, 2007 WL 1464260, at *6 (W.D.Mich. May 17, 2007)(*citing Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) ("sore, bruised ear lasting for three days" insufficient to show non-*de minimis* physical injury)*; Jackson v. Smith*, 2006 WL 118284, at *4 (W.D.Mich. January 13, 2006)("episode of upper gastric discomfort clearly cannot be considered more than a *de minimis* physical injury").

457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). "First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Phelps* at 102 (*citing Lugar* at 937, 102 S.Ct. at 2753). In addition, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* An individual is deemed a state actor if "he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.* ("volunteer prison chaplain" deemed "state actor, because the circumstances of the case showed that he exercised state authority, was bound to apply prison policies, and acted 'within the institutional structure of chapel command'"). *K.S. v. Detroit Public Schools*, 2015 WL 4459340, at *7 (E.D.Mich. July 21, 2015)(Lawson, J)(*citing Phelps* at 102).

In *K.S.*, the Court found that although the defendant instructed classes at a Detroit Public Schools ("DPS") facility on a purely voluntary basis, he was a state actor because his volunteer activity involved teaching a mandatory leadership class and he taught his class on the premises of the school and used school facilities during school hours. *Id.* at 8. The court noted that DPS furnished the Defendant with a classroom and made his class a requirement for graduation. *Id.* In determining that the defendant was a state actor, the court relied on *Phelps, supra*, in which a volunteer clergyman was found to be a state actor for somewhat different reasons: his right to hold services in the prison was a privilege created by the state, he signed a contract agreeing to follow institutional policies, and was allotted privileges also

given to prison employees. *Id.* at 102.

In this case, MBTF operates solely within the grounds of JCF, an MDOC facility. *Response, 6-7, Docket #14,* Pg ID 139; *see also Plaintiff's Exhibit 1,* Pg ID 153. MBTF uses the same address as JCF on its letterhead and its telephone number (although it has its own extension) is the same as JCF's. *Id.* MBTF, a non-profit, uses prison labor. *Id.* Olmstead, the director of MBTF, created the wage scales for prisoners employed by the MBTF. *Plaintiff's Exhibit 4.* Olmstead hired prisoners and the relationship between the prisoners and MBTF is dictated by the MDOC Policy Directive. *Plaintiff's Exhibit 5,* Pg ID 216, *Plaintiff's Exhibit 7,* Pg ID 225. The MBTF "salary cap" is also dictated by MDOC policy. *Plaintiff's Exhibit 4,* Pg ID 209. Defendant King, a Corrections Officer at the JFC, was hired by Olmstead to maintain security at MBTF. *Plaintiff's Exhibit 6,* Pg ID 219-221.

The Complaint alleges that Olmstead had the ability to place a "hold" on a prisoner employee to prevent a prison transfer to another facility, giving her veto power over a proposed transfer by the MDOC. "A private party may be deemed to be a state actor and thus acting under the color of state law if the party's actions are 'fairly attributed to the state.'" *Maben v. Terhune*, 2015 WL 1469719, at *5 (E.D.Mich. January 30, 2015)(*citing Revis v. Meldrum,* 489 F.3d 273, 289 (6th Cir.2007)); *Lugar*, *supra,* 457 U.S. at 937, 102 S.Ct. at 2753. MBTF's function in offering training and work programs, consistent with inmate job placement within the prison, is a government function. *See Beard v. Federal Bureau of Prisons*, 2017 WL 3168938, at *1 (S.D.Ill. July 26, 2017)(civil rights claims permissible

against UNICOR, "a government corporation within the Federal Bureau of Prisons ("BOP") that offers industrial work programs and training opportunities for federal prisoners").

While in contrast to UNICOR, MBTF is a non-governmental organization, it likewise serves a "governmental function" by offering training and employment to prisoners. *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992), cited by Defendants in support of their contention that they were not state actors is distinguishable. *Wolosky* holds that the defendant entity's receipt of government funding, fulfilling of a government contract, or its compliance with state regulations "did not convert it into a state actor." *Id.* at 1336. In contrast here, present Defendants' state actor status is not based on any of the rejected *Wolosky* factors but because MBTF hires prisoners, sets pay grades for prisoners, uses correctional officers employed by the MDOC, and has veto power over institutional transfers. As such, Plaintiff has adequately pled that Olmstead and Holey are public actors.[6]

---

6

*But see Hudson v. DeForest*, 2010 WL 1141609, at *3 (E.D.Mich. March 24, 2010) (MBTF Defendants not state actors: MBTF was "entirely privately funded, with its only provision in the state Appropriations Bill being the grant of use of the building . . . built by Defendant MBTF and later donated to . . . State of Michigan;" MBTF "run by a board of directors, only one of whom is an employee of the State of Michigan;" [a]ll hiring and firing decisions are made by Defendant MBTF; and "there [was] no contract between Defendant MBTF and the MDOC."

However, a number of factors not discussed in *Hudson* were raised in response to the present motion such as MBTF inclusion in the MDOC policy directive, MBTF hiring of corrections officers, the setting of prisoner employee wages, and MBTF's alleged involvement in facility transfer decisions.

### C. The Retaliation Claims

In contrast to the independent Eighth Amendment claims, Plaintiff's allegation that he was transferred and lost a lucrative prison job in retaliation for making complaints regarding the sexual harassment states a claim of First Amendment violations.

In *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

Plaintiff's filing of grievances and other complaints regarding King's behavior is "protected activity." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)("inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). Plaintiff's claim that he lost his well-paying job and was transferred as a result of the complaints and grievances is sufficient to state an "adverse action." "The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted." Thaddeus–X, 175 F.3d at 396, 398. Olmstead's alleged lifting of the hold which cleared the way for a retaliatory transfer of Plaintiff "would deter a prisoner of ordinary firmness from continuing to engage in the protected conduct." *See Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005)(while "ordinarily a transfer would not deter a prisoner of ordinary

firmness," a transfer coupled with the loss of a high-paying prison job was "adverse action"). Likewise here, Plaintiff's transfer, along with the loss of his eight-year position with the MBTF, constitutes an adverse action.

Plaintiff has also stated a causal connection between the constitutionally protected filing of grievances and the loss of job and transfer. He alleges that after he filed a complaint against King around September 11, 2014, King stated the following day that Plaintiff was "too big for his britches" followed by Plaintiff's immediate transfer to a different unit where he was lodged with a schizophrenic patient. *Complaint* at ¶ 7. While Plaintiff was successful in being moved back to his original unit two days later, King issued a misconduct ticket which eventually resulted in a not guilty finding. *Id.* ¶ ¶ 9-11. The Complaint indicates that the not guilty finding occurred sometime in the first week of October, 2014 and that Plaintiff continued to lodge "verbal and written complaints "seeking to have" King's work computer seized. *Id.* at ¶ 12. On October 10, 2014, Olmstead lifted an apparently longstanding "hold" which until that time had protected Plaintiff from transfer to another facility.[7] *Id.* at ¶ 14. Plaintiff, alleging that Olmstead "turned a blind eye for years

---

[7] Olmstead argues in her reply that she has "absolutely zero control when it comes to the transfer of prisoners to and from [JCF]," and that "[u]pon information and belief," MDOC regularly transfers a prisoner making a complaint involving sexual wrongdoing." *Reply* at 3; fn 2. However, Olmstead's claim that she did not have any control over the transfer is unaccompanied by an affidavit or other evidence showing that she did not have a hand in the transfer. And after all, this is a Rule 12(b)(6) motion, based on the allegations in the complaint, not a motion for summary judgment. Olmstead also argues that Plaintiff was not reinstated in his previous MBTF position because following his transfer, MBTF employees found pornographic material on his computer on October 31, 2014 and that

to numerous sexual violations within MBTF," *Id.* at ¶ 22, alleges that Olmstead set the groundwork for his transfer in retaliation for his complaints about his treatment while working at MBTF. *Id.* at ¶ 14. Because in this case the "totality of the circumstances," including the threats and earlier retaliatory action by King, along with "extremely close temporal proximity" between the protected activity and the loss of the job and transfer to another facility, adequately states a causal connection under *Thaddeus-X*. *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Olmstead's motion for qualified immunity should also be denied. A state official is protected by qualified immunity unless the plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194,121 S.Ct. 215,1150 L.Ed.2d 272 (2001). It is a violation of an inmate's Constitutional rights if a prison official retaliates against him for the exercise of a First Amendment right such as filing a grievance. This principle was clearly established well before the alleged acts forming the basis of Plaintiff's complaints. *See Thaddeus-X, supra*, which the Sixth Circuit decided in 1999. As such, Olmstead is not entitled to qualified immunity.

---

because of the misuse of computer privileges, Plaintiff was disqualified from further work with the MBTF. *Id.* at 3, *Reply Exhibit 7*. However, the fact that MBTF staff found contraband on Plaintiff's computer weeks after the transfer is irrelevant to whether the transfer was motivated by retaliatory animus. Moreover, Plaintiff disputes that he uploaded pornography to his work computer at any time.

### 2. Retaliation Claims Against Holey

In contrast, while Plaintiff alleges that he made Holey aware of King's harassment, he does not allege that Holey played any part in the loss of job, transfer to another facility, or any other retaliatory activity. As such, I recommend that the claims of retaliation against Holey be dismissed.

### IV.  CONCLUSION

For these reasons, I recommend that Defendants' Motion to Dismiss [Docket #7] be GRANTED in part and DENIED in part:

> I recommend that the motion be GRANTED as to the Eighth Amendment Claims against Defendants Olmstead and Holey;
>
> GRANTED as to the First Amendment retaliation claims against Defendant Holey;
>
> DENIED as to the First Amendment retaliation claims against Defendant Omstead; and
>
> DENIED as to Defendant Olmstead's motion for qualified immunity.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a co py of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 30, 2018                    s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           U.S. MAGISTRATE JUDGE

---

### CERTIFICATE OF SERVICE

I hereby certify on January 30, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 30, 2018.

                                           s/Carolyn M. Ciesla
                                           Case Manager for the
                                           Honorable R. Steven Whalen